UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MOSES JOHNSON II,

                              Plaintiff,

      v.                                                    **DECISION AND ORDER**
                                                                     14-CV-580S

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

                               Defendant.

      1.      Plaintiff Moses Johnson II challenges an Administrative Law Judge's ("ALJ") decision, dated January 31, 2013, wherein the ALJ determined that Plaintiff was not disabled under sections 216(I) and 223(d) of the Social Security Act. He now contends that this determination is not based upon substantial evidence, and reversal is warranted.

      2.      Plaintiff filed an application for disability insurance benefits on August 27, 2011, initially alleging a disability beginning on December 7, 2007. The application was initially denied on November 15, 2011, and Plaintiff was granted a hearing on that denial. Plaintiff and a vocational expert testified before the ALJ on January 4, 2013, at which time the alleged onset of disability was amended to June 27, 2011. Following the ALJ's denial of the application on January 31, 2013, the Appeals Council denied Plaintiff's request for review on May 20, 2014, rendering the ALJ's determination the final decision of the Commissioner. Plaintiff filed the instant action on July 17, 2014.

      3.      Plaintiff and the Commissioner each filed a Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988).

1

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (internal quotation marks and citation omitted). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982), *cert denied*, 459 U.S. 1212 (1983).

5. To determine whether the ALJ's findings are supported by substantial evidence, "a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7. This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8. While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C.

§ 423(d)(2)(A); 20 C.F.R. § 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460-61, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9. In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff had not engaged in substantial gainful activity since June 27, 2011, his alleged onset date (R. 17);[1] (2) Plaintiff had the following severe impairments: aortic stenosis, status post mechanical valve replacement, obesity, and a history of a learning disability (R. 17); (3) Plaintiff did not have an impairment or combination of impairments that met or medically equaled a recognized disabling impairment under the regulations (R. 17-18); (4) Plaintiff had the residual functional capacity ("RFC") to perform light work as defined by the applicable regulation with certain exceptions, including the limitation of work to simple, repetitive, low stress work which could be performed at "a slightly slower than average pace, i.e., no more than 10% slower than average" (R. 18-24); and (5) Plaintiff was not capable of performing any of his past relevant work, but three were nonetheless jobs that existed in significant numbers in the national economy that Plaintiff could perform. (R. 25-26.)

10. Plaintiff first contends that remand is warranted because the ALJ's determination that Plaintiff could perform light work was not supported by substantial evidence. Specifically, Plaintiff argues that, because there was no medical evidence of his functional capacity following his January 2012 aortic valve replacement, the ALJ improperly relied on his own lay opinion when he should have instead recontacted Plaintiff's treating physician for clarification.

The ALJ determined that Plaintiff was capable of performing light work subject to

---

[1] Citations to the underlying administrative record are designated as "R."

4

several additional limitations. Under the applicable regulations:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b). The additional physical limitations found by the ALJ were the need to limit work to simple, repetitive, low stress tasks and that the job could involve no more than frequent fine motor skills with his hands. (R. 18.) In reaching this determination, the ALJ gave controlling weight to the opinion of Plaintiff's treating cardiologist, Dr. D'Angelo. (R. 23-24.) This cardiologist completed a cardiac RFC questionnaire in September 2011 wherein he indicated that Plaintiff was incapable of even low stress jobs; could only stand or walk for less than 2 hours in an 8 hour workday; could walk only one block without rest or sever pain; and could lift or carry only less than 10 pounds rarely. (R. 277-80.) As noted by the ALJ, however, these findings were the result of Plaintiff's severe aortic stenosis, which was surgically treated in January 2012 when Plaintiff underwent a mechanical aortic replacement. (R. 23-24, 277, 278, 280.)

In determining that Plaintiff had the ability post-surgery to perform a substantial range of light work activities, the ALJ relied in part on Dr. D'Angelo's update in December 2012. (R. 24.) The cardiologist opined at that time that Plaintiff had made clinical improvements over the prior severe preoperative functional limitations. (R. 24, 533.) In fact, although Plaintiff required "tight surveillance of his level of anticoagulation secondary to his mechanical prosthesis," Plaintiff's post-operative treatment plan required "increased exercise" rather than abstention. (R. 24, 533.) The ALJ did not, however, rely solely on this update, but also considered the cardiologist's opinion in connection with other evidence in

5

the record. In particular, the ALJ highlighted that Plaintiff's own testimony regarding his capabilities confirmed the significant post-surgical improvement. (R. 19-20, 24.) At the hearing, Plaintiff described how he had improved to the point where he could now lift 10-15 pounds, as opposed to an inability to lift anything prior to the surgery; he went to the gym 3 to 5 times a week; he could now walk further if he takes his time; and he did his own cleaning, cooking, grocery shopping. (R. 19-20, 36-40, 48-49.) Finally, the ALJ also gave some weight to the opinion of a consultative physician who opined that, even prior to the surgery resulting in Plaintiff's improvement, Plaintiff was required to avoid only activities requiring moderate or greater exertion due to his heart disease. (R. 23, 386.)

Thus, this is not a case where a medical opinion was either not obtained or completely rejected. Cf. Haymond v. Colvin, No. 1:11-CV-0631(MAT), 2014 WL 2048172, *7 (W.D.N.Y. May 19, 2014) (remand warranted where "no psychiatrist, psychologist, social worker, or counselor examined Plaintiff and gave an opinion regarding the functional limitations" resulting from an acknowledged impairment). Instead, the ALJ appropriately weighed all of the evidence available, including the opinion of Plaintiff's treating physician, to determine an RFC finding that was consistent with the record as a whole. See Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) (an ALJ's RFC determination need not perfectly correspond with the opinion of any one medical source where it is supported by the record as a whole) (citing Richardson v. Perales, 402 U.S. 389, 399, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)). As a result, there was no gap in the record or ambiguity that would have triggered the ALJ's affirmative duty to further develop the record by recontacting Dr. D'Angelo. See generally Rosa v. Callahan, 168 F.3d 72, 79 n. 5 (2d Cir. 1999); see also Tankisis v. Comm'r of Social Sec., 521 F. App'x 29, 34 (2d Cir. 2013) (remanding solely to direct ALJ to obtain an express RFC opinion from a medical source inappropriate where

record otherwise contains sufficient evidence on which the ALJ may base this determination).

11. Plaintiff next contends that the ALJ's inclusion of a 10% allowance for reduction in pace as a nonexertional limitation was unsupported by the record. He argues that this was error where the vocational expert testified that "anything over 10 to 15%" would interfere with the ability to sustain employment. (R. 53-54, see Pl's Mem of Law at 26-27.) However, the ALJ's reasoning for assigning a percentage which reflected Plaintiff's ability to maintain employment despite the potential to be minimally slower than average is clear from his decision and supported by substantial evidence in the record. Initially, the ALJ highlighted Plaintiff's prior ability to maintain a production line job, noting that this employment ended only because it had been a temporary position, as well as Plaintiff's thirteen year work history. (R. 22.) The ALJ also considered the opinion of the consultative psychologist, who opined that Plaintiff would have "minimal to no limitations" in following and understanding simple directions, performing simple tasks independently, and maintaining attention and concentration. (R. 24, 382 (emphasis added).) Considerable weight was given to this opinion because of its consistency with prior test results for Plaintiff. (R. 24, 382-83, 526-27.) The Court therefore finds no error or ambiguity by the ALJ's use of the percentage to reflect the potential minimal limitation, i.e. a limitation not significant enough to interfere with the ability to maintain employment, in Plaintiff's concentration and pace found by the consultative examiner. A higher percentage, contrary to Plaintiff's argument, would in fact be contrary to the findings in the record as recognized by the ALJ. Remand is therefore not warranted.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 9) is DENIED;

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 11) is GRANTED;

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.

SO ORDERED.

Dated: September 3, 2015
       Buffalo, New York

       /s/William M. Skretny
       WILLIAM M. SKRETNY
       United States District Judge